Teresa H. Pearson, P.C., OSB No. 953750
teresa.pearson@millernash.com
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204-3699
Telephone: (503) 224-5858
Fax: (503) 224-0155

Attorneys for Receiver
Pivotal Solutions, Inc.

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Orchards Village Investments, LLC,<br><br>        Debtor. | Case No. 09-30893-rld11<br><br>Chapter 11<br><br>Adversary Proceeding Case No.<br><br>DECLARATION OF RICHARD A. HOOPER IN SUPPORT OF RECEIVER'S MOTION TO DISMISS BANKRUPTCY CASE, OR IN THE ALTERNATIVE, TO EXCUSE COMPLIANCE WITH 11 U.S.C. §543<br><br>**(Oral Argument Requested)** |

        I, Richard A. Hooper, declare as follows:

        1.    I am the President of Pivotal Solutions, Inc. ("Pivotal"). Marcia A. Frey is the Vice President of Pivotal. I make the statements in this declaration based on my personal knowledge and my review of the pertinent business records of Pivotal. I am over 18 years old and I am competent to testify.

**Page 1 of 5**  Declaration of Richard A. Hooper in Support of Receiver's Motion to Dismiss Bankruptcy Case, or in the Alternative, to Excuse Compliance with 11 U.S.C. §543

PDXDOCS:1823996.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

2. Pivotal is an experienced receiver, and serves or has served as a receiver for assisted and independent living facilities, including in the following cases:

- U.S. Bank National Association v. Long Beach Retirement Community, Pacific County Superior Court, case no. 07-2-00139-7
- Bank of Clark County v. Kennewick Care, L.L.C., et al., Benton County Superior Court, case no. 08-2-03102-8
- Bank of Clark County v. Parkview Estates Cottages, LLC, et al., Benton County Superior Court, case no. 08-2-03103-6

3. Pivotal has also previously served as receiver or as chief restructuring officer for other businesses involving various other types of real and personal property, as described more specifically on the attached Exhibit A.

4. Orchards Village is a senior living community located in Clark County, Washington. Orchards Village provides independent living, assisted living, and memory care services to its residents. Orchards Village currently has 78 elderly residents in a combination of independent living, assisted living and memory care.

5. In late August, 2008, Pivotal was appointed as a general receiver over Orchards Village Investments, LLC ("OVI"), Orchards Village Properties, LLC ("OVP"), Farmington Centers, Inc., Henry's Orchards Village, LLC ("Henry"), Sugarman's Orchard, LLC ("Sugarman"), Carburton Properties 8, LLC ("Carburton"), Jack Burgess and Teresa Burgess, co-Trustees of the Burgess Family Trust dated 7/31/1992 ("Burgess"). Pivotal was proposed as the receiver because of its extensive and successful experience as a receiver for all types of property, including its experience as a receiver for assisted living communities.

6. Pivotal has not taken any action to reject the Commercial Lease dated June 1, 2005, between OVI and OVP.

7. OVP, and not OVI, previously operated the Orchards Village senior living community under OVP's license until August 28, 2008.

Declaration of Richard A. Hooper in Support of Receiver's Motion to Dismiss Bankruptcy Case, or in the Alternative, to Excuse Compliance with 11 U.S.C. §543

PDXDOCS:1823996.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

8. Upon entry of the Order Appointing General Receiver, Pivotal immediately proceeded to negotiate and enter into an Occupancy and Services Agreement with Regency Pacific, Inc. ("Regency"). Attached as Exhibit B is a true copy of the Occupancy and Services Agreement. DSHS would not issue Regency a provisional license without an agreement such as this in place.

9. Pursuant to Occupancy and Services Agreement with Regency, Pivotal granted Regency the right to occupy the facility and to operate the facility as an agent of Pivotal in its capacity as receiver. DSHS would not issue Regency its provisional license until after the Occupancy and Services Agreement was signed by all parties and Regency had a clear right to occupy the facility.

10. After the Occupancy and Services Agreement was signed, OVP relinquished its license, and on August 28, 2008, DSHS filed its Notice of Granting of Provisional License to Regency Pacific, Inc., which invoked the receivership with respect to OVP.

11. After relinquishing its license, OVP no longer has a license to operate the facility.

12. Since its appointment in August 2008, Pivotal has been operating Orchards Village. In that time, Pivotal has stabilized and improved operations. Pivotal has successfully increased occupancy from 55 units and 60 total residents to 72 units and 78 total residents.

13. Pivotal did this by changing the facility's marketing plan, increasing external marketing and visibility, adding a second marketing person, changing the meal plan for independent living residents to increase plan options, and immediately eliminating a previously-required buy-in contract for independent living residents that the Receiver felt was deceptive and unfair. Overall staff morale has improved significantly under the new management company and this enthusiasm is apparent to residents and new prospective residents.

**Page 3 of 5**   Declaration of Richard A. Hooper in Support of Receiver's Motion to Dismiss Bankruptcy Case, or in the Alternative, to Excuse Compliance with 11 U.S.C. §543

PDXDOCS:1823996.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

14. Before Pivotal was appointed, the facility had trouble paying its operating expenses and was showing cash losses each month. The Receiver contemplates some period of time needed to stabilize the operations and had negotiated a mechanism for funds to be provided by the Bank of Wyoming as needed. Pursuant to the Order Appointing General Receiver, the Bank of Wyoming advanced funds to pay operating expenses in the amount of $20,000 on September 16, 2008, and an additional $71,935.26 on October 27, 2008. Since the October 27, 2008, advance the facility has generated positive cash flow. During the five and one-half month period where Pivotal has been operating the facility, Pivotal has brought the facility to the point where now it can not only pay operating expenses, it has started to make payments to the senior secured lender. On February 9, 2009, the Receiver remitted $75,000 to the Bank of Wyoming.

15. Pivotal has been negotiating with several potential buyers pursuant to the orders of the Superior Court of Washington, and has recently moved to employ a broker in order to expand the pool of potential buyers in order to enhance the price. That motion is currently set for hearing on February 20, 2009.

16. Pivotal has already received claims in the receivership. The claims bar deadlines in the receivership were December 20, 2008, for claims against OVI, Henry, Sugarman, and Burgess. The claims bar deadline was December 26, 2008, for claims against OVP.

17. Pivotal did not, and does not, authorize a bankruptcy filing by OVI.

18. On behalf of Pivotal, I personally had previously informed Mr. Chamberlain that Pivotal does not consent to a bankruptcy filing for OVI.

19. I believe that OVI has filed bankruptcy to slow down Pivotal's efforts to liquidate the assets of the Orchards Village senior living community. Pivotal is required to liquidate these assets pursuant to the Order Appointing General Receiver and the Bid Procedures Order.

Page 4 of 5    Declaration of Richard A. Hooper in Support of Receiver's Motion to Dismiss Bankruptcy Case, or in the Alternative, to Excuse Compliance with 11 U.S.C. §543

PDXDOCS:1823996.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

20. Specifically, I believe that OVI's issuance of a press release regarding the bankruptcy filing, and encouragement of the KPTV television news to broadcast a story on the bankruptcy filing, was intended to drive away potential buyers with whom I am currently negotiating on behalf of Pivotal and the receivership estate. I can imagine no other legitimate reason why OVI would want to create additional stress for the staff and residents by stirring up publicity about this bankruptcy case. The press coverage has undermined Pivotal's efforts to market the facility and increase occupancy.

21. Up until now, Pivotal has made great progress in stabilizing the operations of the Orchards Village senior living facility. This bankruptcy, and the adverse publicity thereof, is not helping the business of the Orchards Village senior living community, it is hurting it. The bankruptcy Mr. Chamberlain filed for OVI only serves to destabilize operations, distress the residents and staff, and make the whole legal process more cumbersome for creditors.

22. OVI does not have, <u>and has never had</u>, a state license to operate the facility.

23. I believe that if Pivotal were to turn over the facility to OVI, OVI would have to shut it down because OVI cannot lawfully operate it. I believe strongly that it would not be in the best interests of creditors (which includes employees and residents) to shut down the Orchards Village senior living community.

I declare under penalty of perjury under the laws of the United States of America and the state of Washington that the foregoing is true and correct.

EXECUTED on this 17th day of February, 2009, in Renton, Washington.

/s/ Richard A. Hooper

Richard A. Hooper

Page 5 of 5    Declaration of Richard A. Hooper in Support of Receiver's Motion to Dismiss Bankruptcy Case, or in the Alternative, to Excuse Compliance with 11 U.S.C. §543

PDXDOCS:1823996.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

PSI has been Receiver for the following matters

- Washington Organic Dried Fruit and Juice (Chelan County), a company that purchased organic fruit and processed it to either dried fruit or juice and then marketed it to companies throughout the US.
- Multi-Ply, Inc. (Clark County), a plywood manufacturer in Vancouver that purchased raw material from local mills and made numerous plywood products for wholesale to lumber stores and commercial end users.
- Crescent Capital Partners, LP (King County), a limited partnership formed to purchase land and construct an assisted living facility in Tukwila, WA. Land was purchased but never developed.
- Goble Farms and William Goble (Benton County), fruit orchards and real estate in Benton and Yakima Counties.
- SMICO Development Company and SMICO Enterprises, Inc. (King County), a commercial driving school for commercial truck drivers and a teen age driving school for first time license applicants.
- Long Beach Retirement Community (Pacific County), an assisted living facility on the Long Beach peninsula.
- Orchards Village (Clark County), an independent living, assisted living, and memory care facility in Vancouver.
- Receiver for Moses Lake Senior Care, LLC, a
- Receiver for Kennewick Care, LLC
- Receiver for Parkview Estates Cottages, LLC

In addition we have been Chief Restructuring Officer for the following matters, all in the Western District of Washington Bankruptcy Court.

- Stairmaster Sports Medical Products, a manufacturer of physical exercise equipment sold to individuals and health clubs around the world.
- Mills Electric, Inc., a commercial electrical contractor in Bellingham with contracts in both Western and Eastern Washington
- Paper Zone, Inc., a retail sales outlet for paper products. CRO responsibilities were limited to locating potential purchasers and conducting a sale of assets.

## OCCUPANCY AND SERVICES AGREEMENT
[Receiver-Controlled Assisted Living Facility]

Parties:

Regency Pacific, Inc. ("Licensee")
Attn: M. Bart Beddoe, CEO
970 – Fifth Avenue NW
Issaquah, Washington 98027
Facsimile: 425-392-6189

and

Pivotal Solutions, Inc., as Court-Appointed Receiver for
Orchards Village Properties, LLC ("Receiver")
Attention: Richard Hooper
451 SW 10th St., Suite 107
Renton, WA 98055
Facsimile: 425-255-1368

Date: August 28, 2008

A. Orchards Village Properties, LLC, an Oregon limited liability company ("Orchards"), was the licensee at a 97-unit (49 licensed) assisted living and independent living facility licensed by the State of Washington located at 10011 NE 118th Avenue, Vancouver, Washington 98682, commonly known as Orchard Village (the "Facility").

B. Orchards, its landlord and several other parties are defendants in an action in Clark County Superior Court (the "Court") entitled <u>Bank of Wyoming v. Orchards Village Investments, LLC</u>, et al, Docket No. 08-2-04250-6 (the "Litigation"). This Agreement is made pursuant to Court order dated August 22, 2008 and the continuing jurisdiction of the Court over the Facility and the parties to said action. The Court has appointed a receiver, Pivotal Solutions, Inc. (the "Receiver") for Orchards and others and authorized the Receiver to enter into this agreement, provided that Licensee obtains from the Department of Social and Health Services (the "Department") a boarding home license to operate the assisted living portion of the Facility. The Department requires that the provider of care services at the Facility be licensed and that it have a right to occupy the Facility.

C. Receiver and Licensee desire to have Licensee occupy the Facility and to provide services to the residents. Licensee is willing to do so on the terms and conditions set forth in this Agreement and as may be approved by any additional orders of the Court.

### AGREEMENTS:

1. **Right of Occupancy.** Receiver grants to Licensee the right to occupy the Facility for the duration of the Receivership or as otherwise terminated by order of the Court, provided Licensee provides to the residents the services specified below.

535556.01 Orchards Village Occupancy and Services        - 1 -

2. **Services.** Licensee shall carry out all of the responsibilities of a licensee under Chapter 18.20 RCW and Chapter 388-78A WAC and to otherwise abide by laws governing operation of a licensed boarding home in the State of Washington. In so doing, the Licensee shall provide the following services:

2.1 **Personnel.**

2.1.1 **Responsibility.** Licensee shall be responsible for the management of the functional operation of the Facility. Licensee shall (i) recruit, employ, train, promote, direct and terminate the employment of personnel as needed for the efficient operation of all departments within the Facility and services offered by the Facility; (ii) maintain and pay the salary levels, personnel policies and employee benefits consistent with Licensee's guidelines; (iii) set the salary levels for any employees hired after the date of this Agreement at levels consistent with Licensee's general salary guidelines; and (iv) provide employee performance standards. Licensee shall be responsible to make certain that sufficient staffing exists within the facility and that orientation and training are performed and completed according to current rules, regulations, and resident needs.

2.1.2 **Control.** All on-site Facility employees shall at all times be Licensee's employees and subject to the direction and control of the Licensee. With input from the Receiver, Licensee shall appoint the Facility General Manager, a term that may be used interchangeably with Facility Administrator. The Licensee shall administer on behalf of Receiver any claims of the employees for such benefits and compensation as described herein.

2.2 **Licensing.** Licensee shall prepare all materials and in following all procedures necessary as required for any license of the Facility under any and all applicable state laws. Licensee shall remain directly responsible to all state and local enforcing agencies for compliance with such provisions and maintain state licensing requirements from and after the effective date hereof. Licensee shall furnish to Receiver copies of all inspections and notices of noncompliance immediately upon receipt by Licensee.

2.3 **Operating Policy.** Licensee shall review and approve all operational policies and procedures that are used in the facility with regard to care of the residents of the Facility and are sufficient to ensure continued licensure and maintenance of the business. Licensee may make such changes as are necessary to integrate the Facility with the Licensee's normal business practices.

2.4 **Forms.** Licensee shall develop and adopt all clinical forms, invoices and other such forms as necessary and desirable for effective, efficient and professional operations of the Facility.

2.5 **Charges.** With the approval of the Receiver, Licensee shall have the right to revise payment and charges schedules from time to time as deemed necessary and appropriate, provided notice of any such changes is provided to residents of the facility in accordance with the terms of their admission agreements or any applicable policies and procedures of the facility, and specifically in accordance with RCW Chapter 70.129, the Resident Rights Act. Notwithstanding the foregoing, Licensee shall have the right to implement such changes as it deems desirable to increase the census

of the Facility. Licensee shall not be bound by agreements with the residents by the previous licensee, Orchards, and shall have the right to enter into new admission agreements with the residents so long as appropriate notice is given under applicable state laws.

2.6  **Information.** Licensee may develop any necessary informational materials, media releases, and other such publicity as is necessary for the efficient operation of the Facility. However, prior to the dissemination of any such materials, releases, and any and all other printed media in any form, Receiver must give its final approval.

2.7  **Equipment and Improvements.** Licensee shall advise Receiver as to equipment and Facility improvements that may be needed for the Facility to maintain its boarding home license and to participate in reimbursement programs, and accreditation, to maintain or upgrade quality, or to replace obsolete or run-down equipment. Receiver shall utilize its best judgment to act upon such advice, including recommendations to the Court and the Plaintiff Lenders in the Litigation. Notwithstanding the foregoing, however, Licensee shall be obligated to act upon any judgments it has with regard to or affecting the health, safety and well being of all employees and residents of the facility, after notice to Receiver and Plaintiff Lenders.

2.8  **Supplies and Equipment.** With Facility funds, Licensee shall acquire nursing supplies, including but not limited to consumable items and non-capital equipment needed to operate the Facility and to supervise maintenance of supply and non-capital equipment inventories at the level in existence at the commencement of this Agreement.

2.9  **Ancillary Services.** Licensee shall have the authority to review and analyze the performance of existing ancillary suppliers, services, contractors and, if necessary, negotiate additional or alternative contractual arrangements therefore. In the event that supplies, services, and the like are provided by Licensee, or a party related in some manner to Licensee, Licensee must ensure that amounts charged under contractual arrangements with related parties do not exceed costs charged to unrelated third parties for the same services in an arms-length transaction.

2.10  **Legal Proceedings/Appeals.** Licensee shall notify Receiver and Plaintiff Lenders of all legal proceedings and shall coordinate all legal proceedings with Receiver's counsel. Administrative appeals of licensing or other actions imposed by the Department of Social and Health Services may only be taken by the Licensee.

2.11  **Insurance.** Licensee shall supervise all insurance programs, except worker's compensation, to ensure that all necessary and proper hazard insurance currently covering the Facility, the furniture, fixtures and equipment situated thereon is maintained, as well as all necessary and proper liability insurance for the protection of all mortgage holders, Receiver, Richard Hooper and Marcia Frey, Licensee and the Administrator, employees and volunteers of the Facility, in form and amounts acceptable to the Receiver. Licensee shall make certain that required workers' compensation insurance is also kept in place. All such costs of insurance coverages shall be paid out of Facility funds, except that insofar as Licensee's employees are not in the direct employ of the Facility, insurance coverages shall be the responsibility and cost of Licensee.

2.12  **Records.**  Licensee shall allow the representatives of the Department of Social and Health Services access to all Facility records to which it is entitled, wherever they are located. Nothing in this Agreement shall be construed as limiting in any manner Licensee's or Licensee's obligation to retain, disclose or produce appropriate documentation and records to any governmental agency pursuant to applicable laws and regulations. All records relating to the operations of the Facility, including resident records, shall be considered property of Licensee. Resident records are confidential records which must be maintained by Licensee. Resident records may be collected and utilized by Licensee, if it has permission of the and residents. Transfer of records may only be to another licensee who is approved by the Department of Social and Health Services.

3.  **Costs and Accounts.**

3.1  **Expenses.**  Licensee shall be responsible for all costs and expenses associated with the operation of its home office and shall hold the Receiver harmless therefrom. Licensee shall have no obligation to use its own funds to pay the bills of the Facility. All funds received by the Receiver that are related to the operation of the Facility shall be deposited in Facility accounts and used first to pay for the necessary care and services to the Facility residents. If funds are insufficient to meet the ongoing current expenses, including the fees due to the Licensee, Receiver shall obtain sufficient funds from the Bank of Wyoming to make up the shortfall and to keep the accounts payable of the Facility current.

3.2  **Trust Funds.**  All trust funds held by the Facility for residents' custodial accounts, if any, shall be the responsibility of Licensee. Licensee shall comply with all legal requirements related to accounting for and holding resident trust funds to the extent that Licensee is involved in the Facility's resident trust funds.

3.3  **Bookkeeping and Accounting.**  With the exception of payroll, Licensee will perform the bookkeeping and accounting from and after the Effective Date through the Term of this Agreement, and Licensee shall during the term hereof provide to the Receiver a monthly accounting of payroll activities. The banking accounts shall remain in the name of the Facility. Receiver shall grant authority to the Licensee to issue checks from Facility funds for the normal expenses of operating the Facility. Licensee shall provide to Receiver the names of all persons of Licensee who have authority to sign on the payroll accounts, monthly financial reports, and other information that the Receiver reasonably requests.

4.  **Term of Agreement.**  This Agreement shall commence upon the date set by the Court in the Litigation, August 28, 2008, (the "Effective Date") and shall continue thereafter until terminated by Licensee, Receiver or the Court, by giving the other party thirty (30) days written notice, which notice shall specify that the contract shall not terminate until either the Facility is transferred to a new licensee or the boarding home residents are transferred to another facility. Licensee may be terminated immediately at any time during the term of this Agreement for good cause shown and upon Court order. If this Agreement is terminated for any reason, the Department of Social and Health Services should be notified immediately at the address indicated in paragraph 8.

5.  **Licensee's Inspection.** Because Licensee is legally responsible for the facility, Licensee's personnel shall have full rights of ingress and egress and may at any time inspect the premises and review operations and care.

6.  **Service Fees.** Licensee shall be entitled to fees for all of its services (other than those directly performed by Facility-specific employees, which costs shall be in addition to the fees and borne by the Facility) as are set forth on Exhibit "A" attached hereto and made a part hereof as if fully set forth herein, net of any discounts, rebates or refunds. In the event a specific cost is determined to apply solely to one of several facilities, including the Facility, under operation by Licensee without apportionment, then such cost shall be charged solely to that facility. The fees reflected on Exhibit A are reasonable under the circumstances and subject to renewal on an annual basis or as otherwise established upon Court approval.

7.  **Assignment.** This Agreement shall not be assigned by Licensee without the prior written consent of the Receiver and the Department of Social and Health Services. Any assignment shall be subject to compliance with all state licensing laws and regulations and change of licensee procedures.

8.  **Notices.** Any notices to be given hereunder or required to be given hereunder, shall be given in writing and shall be provided by actual delivery or by registered or certified mail, postage prepaid. Notice shall be deemed given upon delivery, or if given by mail, upon receipt. Notice by mail should be directed to the parties at the address designated in the preamble or at such other places, as the parties shall designate in writing. Notices to the Department of Social and Health Services shall be to:

> Residential Care Services
> Attention: Business Analysis and Applications Unit
> P.O. Box 45600
> Olympia, Washington 98504-5600

9.  **Relationship of the Parties.**

9.1  The relationship of the parties shall be that of principal and agent, and all acts performed by Licensee during the terms hereof as Licensee of the Facility shall be deemed performed as an independent contractor. Licensee's authority shall not extend to any action that is unlawful, in excess of the limitations of this Agreement, negligent or willfully tortious. Receiver is not a partner or joint venturer with Licensee. . When the Licensee is acting as agent of the Receiver, any correspondence must clearly indicate that Licensee is acting in such capacity.

9.2  Licensee will not be deemed to be in violation of this Agreement if it is prevented from performing any of its obligations hereunder for any reason beyond its control, including without limitation, strikes, shortages, war, acts of God, lack of Licensee's financial resources, or any statute, regulation or rule of federal, state or local government or agency thereof, it being understood and agreed that any limitation on the resources of the Facility may excuse Licensee from fulfilling certain obligations under this Agreement but shall not excuse Licensee of its obligation to ensure, as the

licensed operator of the Facility, that it meets applicable state and federal licensing and certification requirements.

9.3     Notwithstanding any other provision of this Agreement to the contrary, Licensee is responsible for ensuring that the Facility operates in compliance with all applicable laws and regulations, including, but not limited to the laws and regulations governing the licensure of similar facilities under Washington law, and local, state and federal employment rules and regulations. Pursuant hereto, Licensee is responsible for signing and maintaining all certifications required for reporting, if any.

9.4     Notwithstanding any other provision in this Agreement to the contrary, Licensee shall not be responsible for, and Receiver from the Receivership estate shall hold Licensee harmless from, any and all fines, penalties, and any and all other costs, including defense costs, demands, liabilities and claims, from any person, party, entity or governmental authority arising or relating prior to the effective date of this Agreement.

10.     **Confidentiality of Resident Information.** Licensee shall be responsible to maintain and preserve the confidentiality of all resident information, including without limitation, medical records, and shall not disclose such information except as authorized in writing by residents, and/or consistent with applicable state and federal law.

11.     **Notice to Residents.** Residents and prospective residents must be notified in writing that the Facility is operated on Receiver's behalf by Licensee and that Licensee and its staff shall provide direct resident care and services and have access to confidential resident information, including medical records. Licensee shall obtain written acknowledgement and consent from all residents that this is acceptable to them. Receiver may not restrict in any manner communications between residents and Licensee. Residents shall be provided with address and telephone information for Licensee and shall be informed that residents may address any concerns, questions, or complaints directly to Licensee if such residents desire.

12.     **Entire Agreement/Binding Effect/Applicable Law/Modification.** This Agreement contains the entire agreement between the parties and shall be binding upon and inure to the benefit of their successors and permitted assigns, and shall be construed in accordance with the laws of the state of Washington. This Agreement shall not be modified except in writing signed by the parties hereto. If the parties make any changes hereto, they shall notify the Department of Social and Health Services, Residential Care Services, Attention: Business Analysis and Applications Unit, P.O. Box 45600, Olympia, Washington 98504-5600, in accord with its regulations, and changes shall be effective only when approved by the Department of Social and Health Services.

13.     **Captions.** The captions used herein are for convenience of reference only and shall not be construed in any manner to limit or modify any of the terms hereof.

14.     **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties have hereunto caused this Agreement to be duly executed to be effective, as of the date and year first above written.

| | |
|---|---|
| **LICENSEE:**<br>**Regency Pacific, Inc., a**<br>Washington corporation | **RECEIVER, Pivotal Solutions, Inc., as**<br>**Receiver  for  LICENSEE,  Orchards**<br>**Village Properties, LLC**<br>a Washington limited liability company |
| By: *[signature]* | By: *[signature] Richard A Hooper* |

# EXHIBIT A
## TO THAT CERTAIN OCCUPANCY AND SERVICES AGREEMENT
## DATED THE __ DAY OF _____, 2008
## BY AND BETWEEN REGENCY PACIFIC, INC.
## AND PIVOTAL SOLUTIONS, INC.,
### as Receiver for ORCHARDS VILLAGE PROPERTIES, LLC

### FEES TO BE PAID AND COLLECTED

Regency Pacific, Inc. ("Licensee") shall be entitled to receive a fee equal to five (5%) percent of the monthly amount of the revenues of the Facility, for the Services provided pursuant to the Agreement to which this Exhibit A is attached, which amount shall be deemed the minimum Fee. In addition, Licensee shall be entitled to incentive bonuses related to increased census at the Facility as follows:

In any month that the census is between 60% and 85%, the fee shall be increased to 6%.

In any month that the census is greater than 85%, the fee shall be increased to 7%.

**RECEIVER:**
Pivotal Solutions, Inc, a
 Washington corporation

By: _____
Title: _PRESIDENT_

**LICENSEE:**
Regency Pacific, Inc.
a Washington corporation

By: _____
Title: _CFO_