Teresa H. Pearson, P.C., OSB No. 953750
teresa.pearson@millernash.com
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204-3699
Telephone: (503) 224-5858
Fax: (503) 224-0155

Attorneys for Receiver
Pivotal Solutions, Inc.

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Orchards Village Investments, LLC,<br><br>          Debtor. | Case No. 09-30893-rld11<br><br>Chapter 11<br><br>Adversary Proceeding Case No.<br><br>MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION TO DISMISS BANKRUPTCY CASE, OR IN THE ALTERNATIVE, TO EXCUSE COMPLIANCE WITH 11 U.S.C. §543<br><br>**(Oral Argument Requested)** |

       Pivotal Solutions, Inc. (the "Receiver") hereby submits this memorandum in support of Receiver's motion for an order dismissing this case, or in the alternative, for an order excusing its compliance with the requirements of 11 U.S.C. §543. This case should be dismissed because Jeffrey L. Chamberlain ("Mr. Chamberlain") did not have the authority under state law to file a chapter 11 petition for the purported debtor, Orchards Village Investments, LLC ("OVI"). In addition, it would be in the best interests of creditors and the debtor if this case were

**Page 1 of 13** Memorandum of Law in Support of Receiver's Motion to Dismiss Bankruptcy Case, or in the Alternative, to Excuse Compliance with 11 U.S.C. §543

PDXDOCS:1823620.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

dismissed, to allow the Receiver to proceed with its activities pursuant to the orders of the

Superior Court of Washington.  Even if the Court does not dismiss this case, it should excuse the

Receiver from compliance with 11 U.S.C. §543 so the Receiver can continue its efforts to

stabilize the business operations and care for the residents of the Orchards Village senior living

community.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

      A.      **Description of Orchards Village**

              Orchards Village is a senior living community located in Clark County,

Washington.  Orchards Village provides independent living, assisted living, and memory care

services to its residents.  Orchards Village currently has 78 elderly residents in a combination of

independent living, assisted living, and memory care.  Declaration of Richard A. Hooper, ¶ 4

(hereinafter, "Hooper Decl.").  Orchards Village senior living community is owned as follows:

| **Owner** | **Percentage of Ownership of Real Property** | **Percentage of Ownership of Building/Improvements** |
|---|---|---|
| OVI | 23.51% | 72.51% |
| Henry's Orchard Village, LLC | 20.36% | 0.00% |
| Sugarman's Orchard, LLC | 26.84% | 0.00% |
| Carburton Properties 8, LLC | 17.87% | 17.87% |
| Jack Burgess and Teresa Burgess As co-trustees of the Burgess Family Trust dated 7/31/1992 | 9.62% | 9.62% |

Declaration of Teresa H. Pearson, ¶ 3, exh. A (hereinafter, "Pearson Decl.").

              OVI leased its interest in the real property and improvements to Orchards Village

Properties, LLC ("OVP") pursuant to a Commercial Lease dated June 1, 2005, with an original

term of 15 years.  Pearson Decl., ¶ 4, exh. B, exh. P.   The Receiver has not rejected this lease.

Hooper Decl., ¶ 6.

      B.      **Appointment of the Receiver**

              On July 11, 2008, the Bank of Wyoming filed a complaint against OVI, OVP,

**Page 2 of 13**   Memorandum of Law in Support of Receiver's Motion to Dismiss Bankruptcy Case, or in the Alternative, to Excuse Compliance with 11 U.S.C. §543

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

PDXDOCS:1823620.1

Farmington Centers, Inc., Henry's Orchards Village, LLC ("Henry"), Sugarman's Orchard, LLC ("Sugarman"), Carburton Properties 8, LLC ("Carburton"), Jack Burgess and Teresa Burgess, co-Trustees of the Burgess Family Trust dated 7/31/1992 ("Burgess"), Mr. Chamberlain, Donna J. Chamberlain, Theadore J. Chamberlain, Faye M. Chamberlain, Zalta III, LLC, Pinnacle Bank of Oregon, and Clark County, in the Superior Court of Washington for the County of Clark, case no. 08-2-04250-6.  The complaint requested four types of relief pursuant to eight separate causes of action: (1) foreclosure of real property, management agreement, and personal property, (2) money damages for breach of contract, promissory note, and guarantees, (3) appointment of a receiver, and (4) for an accounting.  Pearson Decl., ¶ 4, exh. B.

On July 31, 2008, the Bank of Wyoming filed its Motion for Order Appointing a General Receiver, asking the Superior Court of Washington to appoint a general receiver for defendants OVI, OVP, Henry, Sugarman, and Burgess.  Pearson Decl., ¶ 5, exh. C.  Pivotal Solutions, Inc. was proposed as the receiver because of its extensive and successful experience as a receiver for all types of property, including its experience as a receiver for assisted living communities.  Hooper Decl, ¶¶ 2, 3, and 5.

On August 22, 2008, the Superior Court of Washington entered its Order Appointing General Receiver, appointing Pivotal Solutions, Inc. as a general receiver under Washington law for OVI, OVP, Henry, Sugarman and Burgess.  Pearson Decl., ¶ 6, exh. D.  By its terms, the order was immediately effective as to OVI, Henry, Sugarman, and Burgess.

Under Washington law, only an entity with a proper state license may operate an assisted living facility.  At the time, OVP was the licensed operator of the facility.  Therefore, the Order Appointing General Receiver provided that it would not be effective with respect to OVP until such time as the Washington Department of Social and Health Services ("DSHS") issued a provisional license to the new provider designated by the Receiver.  Upon entry of the Order Appointing General Receiver, the Receiver immediately proceeded to negotiate and enter into an Occupancy and Services Agreement with Regency Pacific, Inc. ("Regency").  Hooper Decl., ¶ 8,

PDXDOCS:1823620.1                    MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

exh. B.  DSHS would not issue Regency a provisional license without an agreement such as this

in place.  After the Occupancy and Services Agreement was signed, OVP relinquished its

license, and on August 28, 2008, DSHS filed its Notice of Granting of Provisional License to

Regency Pacific, Inc., which invoked the receivership with respect to OVP.  Hooper Decl., ¶¶ 9-

10; Pearson Decl., ¶ 7, exh. E.

   The Order Appointing General Receiver provides in relevant part that:

  3.  The Receivership Defendants and their members, managers, partners,
officers, agents, employees, representatives, trustees, beneficiaries, and attorneys
are hereby prohibited from:

    (a)  <u>Interfering with the Receiver, directly or indirectly, in the
management and operation of the Receivership Defendants' assets and operations,
or otherwise directly or indirectly taking any actions or causing any such action to
be taken which would dissipate the assets or negatively affect the operations of
the Receivership Defendants;</u>

    (b)  Expending, disbursing, transferring, assigning, selling,
conveying, devising, pledging, mortgaging, creating a security interest in, or
otherwise disposing of the whole or any part of the Receivership Defendants'
assets and the proceeds thereof; and

    (c)  <u>Doing any act which will, or which will tend to, directly or
indirectly, impair, defeat, prevent, or prejudice the preservation of the
Receivership Defendants' assets and operations.</u>

(emphasis added).  The Order Appointing General Receiver further provides:

  7.  Unless and until otherwise ordered by the Court, the Receiver shall be a
general receiver with <u>exclusive possession and control over the assets and the
business of the Receivership Defendants with the power, authority, and duty to
preserve, protect, and liquidate such assets during the pendency of this case.</u>  This
authority includes, without limitation, the following:

    (a)  the authority to sell all of the real and personal property of
the Receivership Defendants;

    (b)  the authority to incur and pay when due all expenses
incurred by the Receivership Defendants in the ordinary course of business, to the
extent they accrue after the Receiver's appointment;

PDXDOCS:1823620.1    MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

(c)    the authority to pay any and all other expenses, regardless of when the debt was incurred, that the Receiver determines in good faith are necessary or beneficial to the operation or winding down of the Receivership Defendants' business operations and the liquidation of the Receivership Defendants' assets.

The Receiver <u>shall have exclusive possession and control over all assets of the Receivership Defendants (subject to the rights of secured creditors, including the Lender), with the power and authority to preserve, protect, and liquidate those assets</u> and to distribute the proceeds thereof to the party or parties legally entitled thereto.

(emphasis added).  And finally, in relevant part, the Order Appointing General Receiver provides:

9.    The Receiver hereby is vested with all powers afforded a receiver under the laws of the State of Washington . . . .

## C.    The Receiver's Successful Operation of Orchards Village

Since its appointment in August 2008, the Receiver has been operating Orchards Village.  In that time, the Receiver has stabilized and improved operations.  The Receiver has successfully increased occupancy from 55 units and 60 total residents to 72 units and 78 total residents.  Hooper Decl., ¶ 12.  The Receiver did this by changing the facility's marketing plan, increasing external marketing and visibility, adding a second marketing person, changing the meal plan for independent living residents to increase plan options, and immediately eliminating a previously-required buy-in contract for independent living residents that the Receiver felt was deceptive and unfair.  Hooper Decl., ¶ 13.

Before the Receiver was appointed, the facility had trouble paying its operating expenses and was showing cash losses each month.  The Receiver contemplated some period of time needed to stabilize the operations and had negotiated a mechanism for funds to be provided by The Bank of Wyoming as needed.  Pursuant to the Order Appointing General Receiver, the Bank of Wyoming advanced funds to pay operating expenses in the amount of $20,000 on September 16, 2008, and an additional $71,935.26 on October 27, 2008.  Since the October 27,

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

2008, advance the facility has generated positive cash flow.  During the five and one-half month period where the Receiver has been operating the facility, the Receiver has brought the facility to the point where now it can not only pay operating expenses, it has started to make payments to the senior secured lender.  On February 9, 2009, the Receiver remitted $75,000 to the Bank of Wyoming.  Hooper Decl., ¶ 14.

      **D.**    **The Receiver's Efforts to Sell the Orchards Village Senior Living Community**

The Order Appointing General Receiver requires the Receiver to preserve, protect and liquidate the assets of the Orchards Village senior living community.  Pearson Decl.,¶ 6, exh. D.  It further required the Receiver to obtain a procedures order governing the sale process prior to seeking court approval of a sale.  On October 21, 2008, the Superior Court of Washington entered its Order Granting Receiver's Motion to Establish Bid Procedures and to Reject Contract with MBK Senior Living, LLC (the "Bid Procedures Order").  Pearson Decl., ¶ 8, exh. F.  The Receiver has been negotiating with several potential buyers pursuant to the Bid Procedures Order, and has recently moved to employ a broker in order to expand the pool of potential buyers in order to enhance the price.  That motion is currently set for hearing on February 20, 2009.  Hooper Decl., ¶ 15.

      **E.**    **Other Activity in the Receivership.**

On October 21, 2008, the Superior Court of Washington entered its Order Granting Receiver's Motion to Extend Automatic Stay, extending the automatic stay of RCW §7.60.110 through March 31, 2009.  Pearson Decl., ¶ 9, exh. G.

The Receiver has already received claims in the receivership.  The claims bar deadlines in the receivership were December 20, 2008, for claims against OVI, Henry, Sugarman, and Burgess.  The claims bar deadline was December 26, 2008, for claims against OVP.  Hooper Decl., ¶ 16.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

F.      **The Bankruptcy**

OVI filed a voluntary chapter 11 petition in this case after the close of business on Friday, February 13, 2009.  Mr. Chamberlain apparently signed the petition on February 6, 2009. On the petition form, Mr. Chamberlain's signature appears under the statement that "I declare under the penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor." (emphasis added).

The Receiver did not, and does not, authorize this bankruptcy filing. Hooper Decl., ¶ 17.  The Receiver had previously informed Mr. Chamberlain that it does not consent to a bankruptcy filing for OVI.  Hooper Decl., ¶ 18.  The Receiver's counsel had previously informed OVI's counsel that, due to the terms of the Order Appointing General Receiver, Mr. Chamberlain did not have the authority to file OVI into bankruptcy.  Pearson Decl., ¶ 10.

II.      **LEGAL ARGUMENT**

A.      **The Court should dismiss this case because Mr. Chamberlain did not have the corporate authority to file it.**

The United States Supreme Court has held that a bankruptcy court must look to state law to determine who has authority to file a bankruptcy petition.  Price v. Gurney, 324 U.S. 100, 106-07, 65 S.Ct. 513, 516-17 (1945).  Judge Elizabeth Perris has previously held that adoption of the Bankruptcy Code did not change this rule.  In re Monterey Equities-Hillside, 73 B.R. 749, 752 n.4 (Bankr. N. D. Cal. 1987) (holding that state court receiver had authority under state law to file bankruptcy petition).

Under state law, if the order appointing the receiver gives the receiver exclusive authority to control the corporate entity, then only the receiver may file the bankruptcy case.  See Oil & Gas Co. v. Duryee, 9 F.3d 771, 773 (9th Cir. 1993) (state-appointed rehabilitator with sole authority over corporation); Chitex Communication, Inc. v. Kramer, 168 B.R. 587, 589-90 (S.D. Tex. 1994) (receiver); In re Crescent Capital Partners, L.P., U.S. Bankruptcy Court for the Central District of California, case no. SA05-14215JR (receiver) (unpublished; copy attached).

**Page 7 of 13**      Memorandum of Law in Support of Receiver's Motion to Dismiss Bankruptcy Case, or in the Alternative, to Excuse Compliance with 11 U.S.C. §543

PDXDOCS:1823620.1
MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

In <u>Oil & Gas Co.</u>, the Ohio Court of Common Pleas had placed Oil & Gas Insurance Company into rehabilitation (which is similar to receivership), and appointed Mr. Fabe as the rehabilitator.  The president of Oil & Gas, Mr. Becker-Jones, filed a bankruptcy petition on behalf of Oil & Gas.  The bankruptcy court dismissed the case, and both the district court and the Ninth Circuit Court of Appeals affirmed.  The Ninth Circuit Court of Appeals held:

> "But the state court order appointing Fabe as Oil & Gas's rehabilitator said "[t]he Rehabilitator shall have all the powers of the directors, officers, and managers of Defendant, whose authorities are hereby suspended."  Order Appointing Rehabilitator, ER 8, exh. 1.
>
> The only person, then, who could go to court on behalf of Oil & Gas was Fabe. And he not only failed to authorize these actions; he opposed them. Therefore, when Becker-Jones purported to file the bankruptcy petition on behalf of Oil & Gas, he was an impostor; his action is null and void. The same is true of whoever appealed the dismissals of that petition in bankruptcy court and district court. We therefore remand to the district court for dismissal of the petition as fraudulently filed."

<u>Oil & Gas Co.</u>, 9 F.3d at 773.

The decision in <u>Crescent Capital Partners</u> is particularly relevant to this case, because it involves the same receiver, under the jurisdiction of the Superior Court of the same state, appointed under an order containing language similar to the language in the Order Appointing General Receiver in this case.  In <u>Crescent Capital Partners</u>, the Superior Court of Washington for King County issued an order appointing Pivotal Solutions, Inc., as a receiver over Crescent Capital Partners, LP.  The Bankruptcy Court for the Central District of California held that the parties signing the bankruptcy petition did not have authority to file it because the order appointing Pivotal Solutions, Inc., gave the receiver "exclusive possession and control" and prohibited management and its agents from "obstructing, delaying or interfering with the Receiver in the performance of the Receiver's duties."  Here, the Order Appointing General Receiver gives the Receiver the same powers and rights to be free from obstruction.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

Mr. Chamberlain lacked authority under the Order Appointing General Receiver to file a bankruptcy petition on behalf of OVI because, effective August 22, 2008, he was not authorized to take any action on behalf of OVI.[1]  Paragraph 7 of the Order Appointing General receiver provides that "the Receiver shall be a general receiver with <u>exclusive possession and control</u> over the assets and the business of the Receivership Defendants with the power, authority, and duty to preserve, protect, and liquidate such assets during the pendency of this case." (emphasis added).  Paragraph 3 of the Order Appointing General Receiver specifically enjoins the manager of OVI (Mr. Chamberlain) from taking any action to interfere with the Receiver's management and operation of OVI.

In <u>Monterey Equities-Hillside</u>, Judge Perris refers in passing to some old cases from other jurisdictions holding that the appointment of a receiver does not terminate the authority of a corporation's board to file bankruptcy.  This Court can and should disregard those cases.  Those cases were decided before, and are contrary to, the Ninth Circuit Court of Appeals' reasoning and holding in <u>Oil & Gas</u>.  Those cases are not binding in this jurisdiction, and some are no longer good law even in their own jurisdictions.  For example, one of those cases is <u>Central Mortgage & Trust, Inc. v. State of Texas (In re Central Mortgage & Trust, Inc.)</u>, 50 B.R. 1010 (S.D. Tex. 1985).  The same court, the District Court for the Southern District of Texas, decided <u>Chitex</u> almost nine years after <u>Central Mortgage</u>, and did not follow it.

**B.    <u>The Court should exercise its discretion under 11 U.S.C. §305(a) to dismiss this case.</u>**

Pursuant to 11 U.S.C. §305(a), "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal or

---

[1] There is only one exception to this exclusivity in the Order Appointing General Receiver, which expressly provides in paragraph 8 that owners of OVI are allowed to file OVI's tax returns.  If the Superior Court of Washington wanted to make another exception to allow the manager of OVI to file a chapter 11 bankruptcy case, it could have done so.  It did not.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

suspension . . . ."

In considering whether dismissal is appropriate, bankruptcy courts look at several factors.

> "Such factors generally include: (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought."

In re Fax Station, Inc., 118 B.R. 176, 177 (Bankr. D. R.I. 990). The first factor, economy and efficiency of administration, is the primary consideration. In re Michael S. Starbuck, Inc., 14 B.R. 134, 135 (Bankr. S.D.N.Y. 1981).

In this case, a receivership has been pending for five and a half months in the Superior Court for the State of Washington. The Washington state receivership statutes, RCW 7.60 *et. seq.*, provide an alternative and adequate means for achieving the equitable distribution of assets, without the need for this bankruptcy case. Federal proceedings are not necessary to resolve the issues involving the Orchards Village senior living community, and in fact, there are many issues that cannot be resolved in this bankruptcy case because not all of the parties to the receivership are subject to the jurisdiction of this Court. Four of the five owners of the property are in the receivership, and remain subject to the receivership, after this bankruptcy filing. OVI is the only entity that has attempted to file bankruptcy. If the Court does not dismiss this case, there will be two courts supervising the same property—the Superior Court for the State of Washington supervising the receivership of OVP, Henry, Sugarman, and Burgess, and this Court supervising the chapter 11 case of OVI. This will probably double the work involved, and the costs, of administration. In addition, creditors of OVI, who have already filed claims in the

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

receivership case, would have to incur the expense of filing claims a second time.

   The Receiver believes that OVI has filed bankruptcy to slow down the Receiver's efforts to liquidate the assets, which the Receiver is required to do pursuant to the Order Appointing General Receiver and the Bid Procedures Order.  Hooper Decl., ¶ 19.  Specifically, the Receiver believes that OVI's issuance of a press release regarding the bankruptcy filing, and encouragement of the KPTV television news to broadcast a story on the bankruptcy filing, was intended to drive away potential buyers with whom the Receiver is currently negotiating.  Hooper Decl., ¶ 20.  It is improper to use a bankruptcy filing to circumvent the lawful orders of a state court judge.  If OVI had concerns about the state court judge's orders, it should have taken those matters to the state court.

   Up until now, the Receiver has made great progress in stabilizing the operations of the Orchards Village senior living facility.  This bankruptcy, and the adverse publicity thereof, is not helping the business of the Orchards Village senior living community, it is hurting it.  The bankruptcy Mr. Chamberlain filed for OVI only serves to destabilize operations, distress the residents and staff, and make the whole legal process more cumbersome for creditors.  Hooper Decl., ¶ 21.

  **C.**  **Even if the Court does not dismiss this case, it should excuse the Receiver from complying with 11 U.S.C. §543.**

   Section 543(d) of the bankruptcy code allows this Court to excuse compliance with sections 543(a)-(c) "if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property . . . ."

   In this case, it is in the interests of creditors to allow the Receiver to remain in possession of the assets of OVI, because there is no practical way for the Receiver to comply with section 543(a)-(c) without jeopardizing the continued operation of the facility.  Moreover, if the Court does not excuse compliance with 11 U.S.C. §543(a)-(c), it will only serve to further

**Page 11 of 13** Memorandum of Law in Support of Receiver's Motion to Dismiss Bankruptcy Case, or in the Alternative, to Excuse Compliance with 11 U.S.C. §543

PDXDOCS:1823620.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

disrupt operations and create additional burdens on residents and staff.

OVI owns an undivided 23.51% interest as a tenant in common in the land and an undivided 72.51% interest as a tenant in common in the building and improvements. It is unclear exactly how the Receiver could deliver control of undivided tenant in common interests back to OVI in this case, and still maintain control of the undivided tenant in common interests of OVP, Henry, Sugarman, and Burgess.

OVI leased its interests to OVP prior to both the receivership and the bankruptcy case. Therefore, OVI's rights are limited to the rights of a landlord under the terms of the lease. OVI does not presently have a right of possession of the property or building. OVI is presently subject to the automatic stay of RCW §7.60.110, and cannot take collection action against the Receiver in its capacity as receiver of OVP in order to gain a possessory right. But even if OVI could terminate the lease to OVP pursuant to 11 U.S.C. §365, the Receiver, as receiver for the tenant OVP, could continue to remain in possession of the real property and improvements pursuant to 11 U.S.C. §365(h)(1)(A)(ii).

Even if the Receiver did turn possession of the of the property and building over to OVI, OVI cannot do anything with it, because OVI has no legal right to operate the Orchards Village senior living community. OVP, and not OVI, previously operated the Orchards Village senior living community under OVP's license until August 28, 2008. OVP relinquished its license and no longer has a license to operate the facility. Hooper Decl., ¶¶ 10-11. OVI does not have, and has never had, a state license to operate the facility. If the Receiver were to turn over the facility to OVI, OVI would have to shut it down because OVI cannot lawfully operate it. The Receiver believes strongly that it would not be in the best interests of creditors (which includes employees and residents) to shut down the Orchards Village senior living community. Hooper Decl., ¶ 23.

Regency currently holds the license to operate the facility. The Receiver entered into an Occupancy and Services Agreement with Regency, pursuant to which the Receiver

PDXDOCS:1823620.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699

granted Regency the right to occupy the facility and to operate the facility as an agent of the Receiver.  DSHS would not issue Regency its provisional license until after the Occupancy and Services Agreement was signed by all parties and Regency had a clear right to occupy the facility.  Hooper Decl., ¶ 9.  If the Receiver no longer has authority as receiver for OVI, and if this Court concludes that the Receiver no longer has a right to occupy the facility, then the Receiver could no longer continue to grant its right to occupy the facility to Regency as its agent. Under those circumstances, DSHS may question Regency's right to keep its provisional license.

## III.    <u>CONCLUSION</u>

For the reasons set forth above, the Court should dismiss this bankruptcy case, or in the alternative, excuse the Receiver from complying with 11 U.S.C. §543(d).

The Receiver is well-qualified to operate the Orchards Village senior living community.  The Receiver has substantial experience as a receiver for senior living communities such as this one.  The Receiver has been proceeding in accordance with the orders of the Superior Court of Washington efficiently and without delay, and has unquestionably improved the financial, working, and living conditions at the community.  This Court can and should allow the Receiver to continue its good work.

DATED this 17th day of February, 2009

MILLER NASH LLP

/s/ Teresa H. Pearson
_____
Teresa H. Pearson, P.C.
OSB No. 953750
teresa.pearson@millernash.com
Phone: (503) 224-5858
Fax: (503) 224-0155

Attorneys for Receiver Pivotal Solutions, Inc.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699

1  Randall P. Beighle, WSBA No. 13421
   Mary K. Schug, WSBA No. 33173
2  **LANE POWELL PC**
   1420 Fifth Avenue, Suite 4100
3  Seattle, Washington 98101-2338
   Telephone: (206) 223-7000
   Facsimile: (206) 223-7107
4  Richard L. Fahrney II (Bar No. 76357)
   **FINGAL, FAHRNEY & CLARK, LLP**
5  5120 Campus Drive, Suite 200
   Newport Beach, CA 92660
   Telephone: (949) 723-8100
6  Facsimile: (949) 723-8108
   Attorneys for David Rutolo
7

HONORABLE J. RYAN
Chapter 11

U.S. BANKRUPTCY COURT
FILED

AUG 2 6 2005

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

ENTERED

AUG 2 6 2005

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

8          UNITED STATES BANKRUPTCY COURT
9           CENTRAL DISTRICT OF CALIFORNIA

10  In Re:                          )   NO. SA05-14215JR
                                    )
11  Crescent Capital Partners, L.P.,   )   **FINDINGS OF FACT, CONCLUSIONS**
                                    )   **OF LAW AND ORDER OF DISMISSAL**
12                      Debtor.     )
                                    )
13                                  )   DATE: 8-4-05
                                    )   TIME: 3:30 pm
14                                  )   Courtroom: 5A
                                    )
15  ─────────────────────────────

16      THIS MATTER came before the Court upon the motion of Darmar, LLC and David A.

17  Rutolo, Jr.,[1] (collectively "Movant" or "Rutolo"), for entry of an order dismissing Debtor's petition

18  (the "Motion"). The Court heard oral argument of all interested parties on August 4, 2005, and

19  considered the following papers and pleadings submitted in support or opposition of the Motion:

20  (1) Rutolo's Motion, along with the Declarations of David A. Rutolo, Jr., Richard Hooper, and

21  Mary K. Schug and the exhibits attached thereto, and Rutolo's Reply pleadings; (2) the Debtor's

22  Opposition, including the Declaration of Ghazi Abu-Salem; (3) the Abu-Salem Parties' Opposition,

23  including the Declaration of Eric B. Zimbelman and the exhibits attached thereto; (4) the Joinder to

24  Rutolo's Motion filed by Point Center Financial, Inc.; and (5) any other papers or pleadings

25  submitted in support or opposition to the Motion.

26      The Court hereby enters the following Findings of Fact and Conclusions of Law.

27

28

Scanned 120085.0001/1223525.1
By: SD



E-10 (8-22)

# I. FINDINGS OF FACT

1.     The Debtor, Crescent Capital Partners LP ("CC Partners" or the "Debtor"), is a Washington limited partnership with its sole asset, an eleven-acre parcel of land, located in Tukwila, Washington (Seattle area).

2.     The Debtor is comprised of a general partner and four limited partners: general partner Crescent Capital Investments at Riverton Creek, LLC ("CCI Riverton Creek"), and limited partners Darmar, LLC, Raven Estates, LLC, Zina Legacy, LLC, and Apextech, Inc.

3.     The Debtor's listed general partner, CCI Riverton Creek, is a Washington limited liability company.  CCI Riverton Creek is comprised of two 50 percent members: the David A. Rutolo Living Trust ("Trust"), a California limited liability company, and Ghazi Abu-Salem.

4.     The CCI Riverton Creek operating agreement designates Abu-Salem as managing member of the general partner, CCI Riverton Creek, and the Trust is designated as nonmanaging member.

5.     Rutolo owns and controls Darmar, LLC, one of the four limited partners in the Debtor.

6.     In April 2004, Rutolo filed suit in the Superior Court for the State of Washington (the "State Court Litigation"), King County Cause No. 04-2-08894-1 SEA.  The Debtor is a defendant in that case, as well as CCI Riverton Creek, Apextech, Raven Estates, Zina Legacy and Abu-Salem.

7.     Rutolo moved for the appointment of a receiver in the State Court Litigation to take possession and control the Debtor limited partnership and all of its assets and affairs.

8.     On April 4, 2005, the State Court entered an Order Appointing Receiver Pursuant to RCW 7.60.025 ("Order Appointing Receiver").  The State Court appointed Pivotal Solutions, Inc.,

---

[1] Rutolo was acting in his capacity as Trustee of the David A. Rutolo, Jr. Living Trust Dated November 19, 1997.

Richard Hooper, and Marcia Frey to act as Receiver for the Debtor. The Order Appointing Receiver gives the Receiver the "exclusive possession and control over Crescent Capital Partners, LP, [the Debtor] with the power and authority to preserve, protect and liquidate" the assets for the benefit of the limited partnership.

9.    The Order Appointing Receiver further provides that the Receiver "is authorized to do all the things determined by the Receiver to be reasonably necessary to the performance of the Receiver's duties for the purposes of protecting and preserving the value of the Crescent Capital Partners, LP."

10.    The Order Appointing Receiver further provides that "Ghazi Abu-Salem and Crescent Capital Investments at Riverton Creek, LLC, and their agents are hereby prohibited from obstructing, delaying, or interfering with the Receiver in the performance of the Receiver's duties. If at any time Ghazi Abu-Salem and Crescent Capital Investments at Riverton Creek, LLC, and their agents, obstruct, delay or interfere with the Receiver in the performance of the Receiver's duties, the Receiver shall be entitled to injunctive relief and sanctions for contempt pursuant to RCW 7.21."

11.    On June 15, 2005, Ghazi Abu-Salem filed the above-captioned Chapter 11 Bankruptcy Petition on behalf of the Debtor. The Receiver did not approve or authorize Abu-Salem to file the Bankruptcy Petition and the Receiver has not ratified the filing.

## II. CONCLUSIONS OF LAW

Based upon the previous Findings of Fact, the Court makes the following Conclusions of Law:

1.    The authority to file a bankruptcy petition is found by looking to state law.  See Price v. Gurney, 324 U.S. 100, 106-07 (1945) (pre-code); In re Monterey Equities-Hillside, 73 B.R. 749, 752 (Bankr. N.D. Cal. 1987).

2.    Abu-Salem and CCI Riverton Creek lacked authority to file the Chapter 11

3

1  Bankruptcy Petition on behalf of the Debtor because the State Court's Order Appointing Receiver

2  gave the Receiver the "exclusive possession and control over Crescent Capital Partners, LP, [the

3  Debtor] with the power and authority to preserve, protect and liquidate" the assets for the benefit of

4  the limited partnership.

5

6          3.      Abu-Salem and CCI Riverton Creek were not authorized to file the Bankruptcy

7  Petition because effective April 4, 2005, they were not authorized to take any actions on behalf of

8  the Debtor limited partnership.

9          4.      Where a person is not authorized to file a bankruptcy petition on behalf of an entity

10  nonetheless files a petition for the entity, the case must be dismissed.  See Chitex Comm. Inc. v.

11  Kramer, 168 B.R. 587 (S.D. Tex. 1994).  The Court concludes that this case should be dismissed

12  because the issue of control over the Debtor limited partnership was resolved by the court's order

13  dated April 4, 2005 in the State Court Litigation, and Abu-Salem and CCI Riverton Creek had no

14  authority to file the Petition or otherwise act on behalf of the Debtor in pursuing the instant

15  proceeding.

16

17          5.      This Court is dismissing the instant proceeding as noted above and the Court

18  therefore does not need to reach or consider the other issues raised in the Motion to Dismiss.

19  However, the Court specifically concludes that the Petition was not filed in bad faith.

20

21          Any conclusions of law listed above that are more properly findings of fact are incorporated

22  herein as findings of fact by this reference.  Any findings of fact listed above that are more

23  properly conclusions of law are hereby designated as such by this reference.

24          NOW, THEREFORE, IT IS HEREBY ORDERED

25          That based upon the foregoing Findings of Fact and Conclusions of Law, the Motion to

26  Dismiss or Abstain is GRANTED; and it is further

27          ORDERED that the Debtor's bankruptcy case is hereby DISMISSED because Abu-Salem

28  lacked authority to file the Chapter 11 Bankruptcy Petition on behalf of the Debtor; except that the

4

1    Court retains jurisdiction to determine any matters concerning enforcement of this Order and any

2    further matters relating thereto.

3

4         DATED at this ____ day of August 2005.

5

6         AUG 2 6 2005

7                                        HONORABLE JOHN E. RYAN
                                         United States Bankruptcy Judge

8

9    Presented by:

10   LANE POWELL PC

11

12   By
         Randall P. Heighle, WSBA # 13421

13       Mary K. Schug, WSBA # 33126
     Admitted Pro Hac Vice

14
     FINGAL, FAHRNEY & CLARK, LLP

15       Richard L. Fahrney II (Bar No. 76357)

16   Attorneys for David A. Rutolo, Jr.

17

18

19

20

21

22

23

24

25

26

27

28

                                         5

120085.0001/1223525.1

**NOTE TO USERS OF THIS FORM:**
*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do **not** file this form as a separate document.*

| | |
|---|---|
| In re Crescent Capital Partners, L.P. | CHAPTER 11 |
| Debtor. | CASE NUMBER SA05-14215JR |

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1.   You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify)*: FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF DISMISSAL


was entered on *(specify date):* 08/10/05    AUG 26 2005

2.   I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date):*    AUG 26 2005


Dated:    AUG 26 2005

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**

By: _____
*Deputy Clerk*

*Rev. 1/01* This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.    **F 9021-1.1**